# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TRUSTEES OF THE CHICAGO REGIONAL COUNCIL OF CARPENTERS PENSION FUND, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 16 C 9165 |
| v. | ) ) ) | Judge Jorge L. Alonso |
| AMERICAN MECHANICAL, INC., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Trustees of the Chicago Regional Council of Carpenters Pension Fund, Trustees of the Chicago Regional Council of Carpenters Welfare Fund, Trustees of the Chicago Regional Council of Carpenters Supplemental Retirement Fund and Trustees of the Chicago Regional Council of Carpenters Apprentice Training Fund (collectively, the "Trustees") filed suit seeking to enforce ERISA § 515, 29 U.S.C. § 1145, against defendant American Mechanical, Inc. Plaintiffs move for summary judgment. For the reasons set forth below, the Court grants plaintiffs' motion [18].

## I.     BACKGROUND

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. *See FTC v. Bay Area Business Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005) ("Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules."). At the summary judgment stage, a party cannot

rely on allegations; he must put forth evidence. Fed.R.Civ.P. 56(c)(1)(A); *see also Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) ("As the 'put up or shut up' moment in a lawsuit,' summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial.").

Where one party supports a fact with *admissible evidence* (i.e., not complaint allegations) and the other party fails to controvert the fact with citation to *admissible evidence* (i.e., not complaint allegations), the Court deems the fact admitted. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of the duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). In this case, the Court deemed many facts admitted for failure to controvert those facts with citations to admissible evidence.

In considering a motion for summary judgment, this Court does not consider facts that parties failed to include in their statements of fact, because to do so would unfairly eliminate the opposing party's opportunity to show that the fact is disputed and make the Court's job of searching for disputed facts extremely difficult and excessively time consuming. *See Torres v. Alltown Bus Services, Inc.*, Case No. 05 C 2435, 2008 WL 4542959 at *1 n.1 (N.D. Ill. Apr. 28, 2011) ("To consider facts not included in a statement of facts would be unfair to the other party, because it would rob the other party of the opportunity to show such facts were controverted."), *aff'd* 323 Fed. Appx. 474, 475 (7th Cir. 2009) ("Since we have already held that it is not an abuse of discretion for a court to refuse to consider evidence whose manner of submission violated local rules, we cannot say that the district court abused its discretion in this case.").

Finally, statements of fact are not the place for legal argument. The following facts are undisputed unless otherwise noted.

Defendant American Mechanical, Inc. ("AMI") is an employer in an industry affecting commerce. From October 1993 to August 2001, Robert Donner ("Donner") served as President. He was also an owner of AMI. In November 1994, as President of AMI, Donner signed with the Chicago and Northeast Illinois District Council of Carpenters (the Court will refer to this entity and its successor as the "carpenters' union") an Agreement (the "1994 Agreement"), in which AMI agreed to be bound by a collective bargaining agreement ("CBA") and "Trust Agreements of the fringe benefit trusts." Plaintiffs are the trusts mentioned in the 1994 Agreement, and they are multiemployer ERISA plans. Under the provisions of the collective bargaining agreement and the Trust Agreements, employers report their contribution obligations on monthly reports. Each month, each participating employer is required to identify the employees for whom contributions are due and, for each, state the number of hours worked and the amount paid.

In 2004, Donner sold his interest in AMI (apparently to one Thomas Farley). In the meantime, for several years, AMI had hired carpenters who were members of the carpenters' union. Specifically, it is undisputed that from November 1994 until some point in 2004, AMI employed members of the carpenters' union. The last member of the carpenters' union to work for AMI during that period was Nicholas Kosjer, who left AMI on February 1, 2004. The parties have put forth no evidence about whether AMI made contributions to plaintiffs during that time.

It is undisputed that, in 2010, Thomas Farley sent the carpenters' union a letter terminating its agreement to be bound by the CBA. The CBA contained a provision that required employer signatories to obtain cash bonds or Surety Bonds covering their obligations to the Trusts. In 2010, AMI canceled its bond and informed the carpenters' union. It is undisputed

3

that the carpenters' union never complained, although the parties dispute whether the carpenters' union consented to AMI's cancellation of the bond.

Defendant has put forth undisputed evidence that, in May 2015, a third party approached AMI and offered to perform millwork for AMI as an independent contractor. That third party lacked capital, so AMI agreed to provide start-up funds. Those funds took the form of putting the third party's employees on AMI's payroll and paying the third party's employees.

The record becomes vague at this point, but it seems that the third party's employees must have been members of the carpenters' union and that the carpenters' union must have gotten wind of AMI's paying those members. It is undisputed that Kimberlee Farley (who, by April 30, 2016, was the sole owner of AMI) signed and sent a contribution report to the plaintiffs for the month of June 2015 and that AMI also submitted contribution reports for the months of July and August 2015. Those monthly contribution reports include the following language:

> We certify the above is a true and complete report of actual hours worked by foreman, journeyman, and apprentice carpenters, and does NOT include hours worked by any self-employed persons, partners or proprietors of the firm. We hereby agree to be bound by and ratify, confirm and adopt all of the provisions of the Area Collective Bargaining Agreement and the Agreements and Declarations of Trust under which the Chicago Regional Council of Carpenters Fringe Benefit Funds are maintained. We agree to keep and maintain contemporaneous time records reporting the hours reported herein.

[Docket 20-9]. Defendant put forth evidence that Kimberlee Farley thought the contribution reports were "not voluntarily file[d]," because they were demanded by the carpenters' union.

Plaintiffs put forth undisputed evidence that AMI failed to make contributions based on those contribution reports for the months of June, July and August 2015. Plaintiffs put forth undisputed evidence that the balance AMI would owe, if liable, is $42,426.94 for fringe benefits, $8,581.77 for liquidated damages and $2,313.31 for interest.

4

## II. STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021 (7th Cir. 2018). If "a reasonable jury could return a verdict for the nonmoving party" then "summary judgment is not appropriate." *Johnson v. Advocate Health & Hosp. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)).

## III. DISCUSSION

Plaintiffs bring suit under ERISA § 502, 29 U.S.C. § 1132, seeking relief for defendant's alleged violation of ERISA § 515, 29 U.S.C. § 1145. ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. The Seventh Circuit has explained:

> Multi-employer plans are defined-contribution in, defined-benefit out. Once they promise a level of benefits to employees, they must pay even if the contributions do not materialize—perhaps because employers go broke, perhaps because they are deadbeats . . . If some employers do not pay, others must make up the difference in higher contributions, or the workers will receive less than was promised. Costs of tracking down reneging employers and litigating also come out of money available to pay benefits.

*Central States, SE & SW Areas Pension Fund v. Gerber Truck Serv.*, 870 F.2d 1148, 1151 (7th Cir. 1989).

Plaintiffs first argue that defendant is liable to make contributions based on the 1994 Agreement. The Court disagrees. It is undisputed that, in 2010, AMI terminated the 1994

Agreement and canceled the bond. It is undisputed that AMI did not employ members of the carpenters' union after February 1, 2004 until, perhaps, 2015.

Next, plaintiffs argue defendant is obligated to make contributions based on the language of the contribution reports, themselves. This is a reasonable argument. Employers, after all, do not need to sign a collective bargaining agreement in order to be bound. *Bricklayers Local 21 of Ill. Apprenticeship & Training Prog. v. Banner Restoration, Inc.*, 385 F.3d 761, 766 (7th Cir. 2004). "[R]ather, '[a]ll that is required is conduct manifesting an intention to abide and be bound by the terms of the agreement.'" *Banner*, 385 F.3d at 766 (citations omitted); *Robbins v. Lynch*, 836 F.2d 330, 332 (7th Cir. 1988) ("Employers may adopt a collective bargaining agreement by a course of conduct."). Factors that demonstrate such an intent to be bound include: "the payment of union dues, the payment of fringe benefit contributions, the existence of other agreements evidencing assent and the submission of the employer to union jurisdiction, such as that created by grievance procedures." *Banner*, 385 F.3d at 766. The Seventh Circuit has cautioned:

> References in cases to the importance of 'intent to be bound' are misleading if taken literally. As so frequently in law, 'intent' is a conclusion rather than a fact. . . . [P]rivate intent counts only if it is conveyed to the other party and shared. You can't escape contractual obligation by signing with your fingers crossed behind your back, even if that clearly shows your intent *not* to be bound.

*Robbins*, 836 F.3d at 332.

Submitting contribution reports containing language similar to the language used on the contribution reports in this case has been found by courts to support a conclusion that an employer is bound by a CBA. *See Banner*, 385 F.3d at 767-68 (seven-year course of conduct, which included submitting monthly contribution reports, manifested intent to be bound by CBA); *Trustees of the Chi. Plastering Institute Pension Trust v. Solarcrete Energy Efficient Bldg. Syst.*,

*Inc.*, Case No. 04 C 7820, 2009 WL 3055383 at *7 (N.D. Ill. Sept. 17, 2009) (employer bound by CBA where it sent in monthly contribution reports, even for periods where no covered work occurred, and apologized to the Funds when it made late payments); *Laborers' Pension Fund v. E. Guerra Co.*, Case No. 99 C 4085, 2000 WL 1349148 at *4 (N.D. Ill. Sept. 14, 2000) (employer bound by CBA where it "sent four contribution reports to the Funds in April, June, October and November of 1998" and each report contained language that "employer agrees to be bound to the terms of the current [CBA]"); *Sullivan v. Hutcheson*, Case No. 93 C 4156, 1994 WL 110401 at *1 (N.D. Ill. March 31, 1994) (employer "evidenced intent to be bound to the [CBA] by submitting contribution reports to the union for the period January 1992 . . . to August 1993—the requested audit period.").

It depends, of course, on the facts of the case, and, in *Dugan v. R.J. Corman RR Co.*, 344 F.3d 662 (7th Cir. 2003), the case came out the other way. There, the Seventh Circuit noted that language like the language on the contribution reports in this case "is meant for the situation in which an employer who has not yet signed a collective bargaining agreement nevertheless acts in conformity with it, indicating an intention to be bound." *Dugan*, 344 F.3d 668. In *Dugan*, the employer had sent in contribution reports, but the Seventh Circuit concluded the reports constituted "weak evidence" of intent, explaining that the employer had indicated its unwillingness to continue as a party to the expired CBA but was obligated to maintain the status quo during a bargaining impasse. *Dugan*, 344 F.3d at 668.

In this case, it is undisputed that defendant submitted three contribution reports and that those reports stated, "We hereby agree to be bound by and ratify, confirm and adopt all of the provisions of the Area Collective Bargaining Agreement and the Agreements and Declarations of Trust under which the Chicago Regional Council of Carpenters Fringe Benefit Funds are

7

maintained." AMI has, thus, indicated their intent to be bound by the CBA. AMI argues that the contribution reports were not "voluntary," because they were "demanded" by the carpenters' union. AMI has put forth no evidence of the manner in which the carpenters' union made the demand or why AMI felt compelled to comply with the demand. AMI has put forth no evidence that suggests it was coerced in a legally-meaningful way or that otherwise suggests the absence of intent to be bound. The Court rejects defendant's argument. In *Robbins*, the defendant argued its contributions were not voluntary, because the union had threatened to strike. The Seventh Circuit was not impressed, explaining:

> The threat to strike is unexceptional. Unions frequently decline to work unless the employer adheres to a collective bargaining agreement. The threat of 'no agreement, no work' hardly makes adherence to the agreement involuntary, as [defendant] supposes. This is the threat, express or implied, of every contractual negotiation. (E.g., 'Unless you pay my price, I won't sell you my iron ore.')

*Robbins*, 836 F.2d at 333. Likewise, in *Banner*, the Seventh Circuit rejected the argument that the defendant's course of conduct was coerced by a union that threatened picketing or a job "shut down." *Banner*, 385 F.3d at 768. Furthermore, this sounds like a defect in the formation of the contract, and the plaintiffs should not be punished for that. *Gerber*, 870 F.2d at 1153 ("If the employer simply points to a defect in the formation—such as fraud in the inducement, oral promises to disregard the text, or the lack of majority support for the union and the consequent ineffectiveness of the pact under labor law—it must still keep its promise to the pension plans. Anything less may saddle the plans with unfunded obligations.").

AMI also put forth evidence that it paid the individuals AMI listed on the contribution reports. They have put forth evidence that the individuals listed on the report were, in fact, employed by a third party (rather than by AMI) and that AMI paid those employees as a way of providing investment capital to the third party. Perhaps, then, AMI has a quarrel with the third

8

party over whether the third party should reimburse AMI for the fringe benefit contributions, but that does not mean the plaintiffs should be denied contributions based on the contribution reports. *Cf. Gerber*, 870 F.2d at 1153 ("Anything less may saddle the plans with unfunded obligations."). By submitting the contribution reports, AMI effectively obligated the plaintiffs to pay benefits based on those hours. Plaintiffs are entitled to the contributions.

In short, there are no genuine issues of material fact, and plaintiffs have shown that they are entitled to judgment as a matter of law on their claim for delinquent contributions. ERISA provides that in "any action" to "enforce section 1145" in which a plaintiff prevails, "the court shall award the plan—(A) the unpaid contributions, (B) interest on unpaid contributions, (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent [of the unpaid contributions] . . . (D) reasonable attorney's fees and costs of the action . . . and (E) such other relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(A)-(E).

Here, plaintiffs have put forth undisputed evidence that the amount of fringe benefit contributions defendant owes for June, July and August 2015 is $42,426.94.[1] Plaintiffs have put forth undisputed evidence that the plan has a liquidated damages provision and that the amount owed under that provision is $8,581.77. The liquidated damages portion exceeds 20% of the unpaid contributions, so it must be reduced to $8485.38. Plaintiffs have put forth undisputed evidence that the amount of unpaid interest is $2,313.31. Accordingly, plaintiffs are entitled to judgment in the amount of $53,225.63. Plaintiffs are also entitled to reasonable attorney's fees and are granted 28 days to file a motion for reasonable attorney's fees.

---

[1] In responding to plaintiffs' statement of facts, defendant put forth no evidence to challenge plaintiffs' calculations. Defendant merely noted that it challenges liability.

## IV. CONCLUSION

For the reasons set forth above, the Court grants plaintiffs' motion for summary judgment and grants plaintiffs' judgment in the amount of $53,225.63. Plaintiffs are granted 28 days to file a motion for reasonable attorney's fees. Civil case terminated.

SO ORDERED. ENTERED: March 7, 2019

_____
JORGE L. ALONSO
United States District Judge